## Case No. 14,720a.
### UNITED STATES v. CARD.
[2 Hask. 469.] [1]

District Court, D. Maine.   Jan., 1881.

INFORMER — PROSECUTOR — MAINE STATUTE — APPORTIONMENT OF REWARD.

1. An informer, under section 11, c. 121, of the Revised Statutes of Maine, is one who first gives important information to the proper authorities that in fact leads to the conviction of a criminal.

2. A prosecutor, under that statute, is one who procures the arrest of the guilty party.

3. The reward given by that statute should be apportioned by the court between the informer and prosecutor according to their respective merit.

Indictment against William R. Card for passing counterfeit notes of the United States. He had been convicted and sentenced to prison.

Morrill Goddard and Charles W. Horton each petitioned the court to certify to the governor and council of Maine that he was entitled to the reward allowed prosecutors and informers under section 11, c. 121, of the Revised Statutes of that state.

Thomas H. Haskell and Nathan Webb, for Goddard.

Wilber F. Lunt, for Horton.

FOX, District Judge. It appears that Morrill Goddard, a lad of about fourteen, in September last was a student at the Cumberland Greely Institute. On the 30th of that month, he was present at a fair in West Cumberland, and, from the conduct of one Record, was led to watch him with some care and shrewdness; finding that Record was making many small purchases and always paying by a bill that was apparently new, receiving back the change, on an examination of some of the bills, Goddard decided they were counterfeit and so informed Bridges, city marshal of Portland, who was present at the fair. After hearing Goddard's account, Bridges concluded

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

to arrest Record who was pointed out to him by Goddard. After his arrest, similar bills were found upon Record, and he also redeemed some of the bills he had passed. He was taken by Bridges to the lock-up in Portland, and the same evening disclosed to Black, a deputy marshal, that he had obtained these bills from Wm. R. Card.

Bridges that night informed Smith, the United States deputy marshal, of Record's arrest, and that he would probably disclose from whom he received those bills, and requested Smith to take charge of the case in behalf of the United States. Smith, therefore, requested Charles W. Horton, who had been a government detective under the internal revenue department, but who was not then in the service of the government, to go with him to the lock-up and have an interview with Record in order to ascertain from whom he obtained these notes. They went there and were informed by Black that Record was willing to disclose all he knew about the notes. They went into the corridor upon which was the cell in which Record was imprisoned. Horton stood at the door of the cell and conversed with Record, Smith being a few feet distant, but within hearing of all that was said. Record then informed them that he had received a large number of these bills from Card, and also where a parcel was concealed.

That same night, Horton made formal complaint before Commissioner Rand against Card for this offense, and caused him to be arrested the next morning, and he was bound over and subsequently convicted. Horton found in the place described by Record the package of bills which were produced by him at the hearing before Commissioner Rand.

It is very certain that it was entirely owing to the sagacity and perseverance of Goddard that Record was arrested for the offense for which he has since been indicted, but on account of his insanity has not yet been put on trial. While thus under arrest, at the instigation and procurement of Goddard, Record first disclosed to Black that Card had furnished him with the counterfeit notes, and this was before Horton knew anything of the matter. The city officers, thinking that it was the duty of the United States officials to carry on the prosecutions for these offences, so informed Deputy Marshal Smith, at whose request Horton accompanied him to the city lock-up, to be present at the interview with Record. At this interview, Horton ascertained from Record nothing which he had not already disclosed to Black, and which Black was ready to communicate to them if Record did not repeat the confession as he had informed Black he was ready to do.

Under these circumstances, it is certainly very questionable whether Horton should be deemed the informer as against Goddard, who had been the occasion of Record's disclosure. Goddard subsequently by letter notified the United States district attorney that

he claimed to be the informer and prosecutor of Record, and that he was ready to furnish the testimony for his conviction.

In U. S. v. One Hundred Barrels of Distilled Spirits [Case No. 15,946], Judge Lowell defines an informer as "he who first gives to a person authorized to receive it, important information which, in fact, leads to the desired result; and the offer is not necessarily confined to persons who should expose the details of the fraud. * * * It is enough, if the result is in fact reached, primarily through his means."

In my opinion, Goddard should be deemed primarily the informer in Card's case, as well as in that of Record; but, as he took no steps to institute a prosecution against Card, and this was all done by Horton, and the arrest of Card was by his procurement, I hold he, rather than Goddard, may properly be deemed the prosecutor of Card.

The claim of Goddard is much the most meritorious; and as the statute authorizes the court to apportion the reward between the parties, I allow to Morrill Goddard three-fourths part of the reward to be paid by the state, and to C. M. Horton one-fourth part thereof.